UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBRA LYNN JOYCE,

Plaintiff,

vs. Case No. 3:10-cv-842-J-MCR

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________________/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI") on May 12, 2004. (Tr. 192-94). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (Tr. 149-51, 162-64). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ"), which was held on December 11, 2007. (Tr. 776-93). A supplemental hearing was held on June 24, 2008 to take additional testimony. (Tr. 794-803).

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16).

On July 15, 2008, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 32-43). Plaintiff requested review of the ALJ's decision on August 12, 2008 (Tr. 28), which the Appeals Council denied (Tr. 3-6); thus making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since December 30, 1999, due to panic disorder and migraine headaches. (Tr. 226).

### B. Summary of Evidence Before the ALJ

Plaintiff was 40 years old at the time of her onset date and has more than a high school education. (Tr. 42). She has past relevant work experience as an office clerk and customer service clerk. (Tr. 24). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.

On December 26, 2001, Plaintiff was evaluated at Baptist Medical Center for complaints of pain in her back, head, and legs. (Tr. 300-01). She was diagnosed with acute cervical strain, contusion of the bilateral hips, and multiple muscle strains. (Tr. 300-03). On September 6, 2002, Plaintiff presented at the emergency department with complaints of migraine headaches and increased heart rate. (Tr. 285). She was diagnosed with Fiorinol and Xanax withdrawal. (Tr. 286-87).

On April 8, 2003, Plaintiff presented to Dr. Thomas Murray, M.D. complaining of migraine headaches and low back pain. (Tr. 375-77). She indicated that her pain

interfered with general activities, mood, relationships, sleep, enjoyment of life, concentration, and appetite. (Id.).

From January 2005 through May 2005, Plaintiff was seen by Dr. Walter Frady, M.D. (Tr. 499). Dr. Frady's records evidence visits for chronic obstructive pulmonary disease ("COPD"), various imaging tests, and one request for a refill of Plaintiff's headache medication. (Tr. 496-501). In a May 2005 impairment questionnaire, Dr. Frady opined Plaintiff suffered significant pain as a result of breathing and chest conditions and migraine headaches. (Tr. 40, 587-89).

On March 4, 2005, Dr. Val Bee, Psy.D., completed a Mental Residual Functional Capacity Assessment and Psychiatric Review Technique form of Plaintiff. (Tr. 420-37). Dr. Bee opined that Plaintiff was moderately limited in her ability to remember and carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and, her ability to set realistic goals or make plans independently of others. (Tr. 420-21). Overall, Dr. Bee opined that Plaintiff was moderately limited in maintaining concentration, persistence, and pace, and mildly limited in activities of daily living and social functioning. (Tr. 434).

On September 16, 2005, Plaintiff began treatment with Dr. Cheryl Truty, M.D. (Tr. 707). Dr. Truty diagnosed Plaintiff with left radial nerve palsy, chronic headaches, anxiety, and asthma. (Id.). She recommended x-rays of the wrist and prescribed Fiorinol, Imitrex, Ultram, and Xanax. (Tr. 708).

On September 19, 2005, Dr. Lynn Harper-Nimock, M.D. evaluated Plaintiff and diagnosed her with COPD, history of left radial nerve palsy, history of migraines, history of anorexia, history of cervical disc disorder, and history of anxiety. (Tr. 568). Dr. Harper-Nimock opined that Plaintiff suffered from mild to moderate limitations in heavy lifting, pushing, pulling, and prolonged writing. (Id.).

On October 26, 2005, Dr. Eric C. Puestow, M.D. completed a Physical Capacity Assessment of Plaintiff. (Tr. 579-86). Dr. Puestow opined that Plaintiff was capable of occasionally lifting 50 pounds and frequently lifting 25 pounds, standing and/or walking about 6 hours in an 8-hour day, and sitting about 6 hours in an 8-hour day. (Id.). Dr. Puestow further indicated that Plaintiff's grip and fine dexterity were found to be normal indicating no nerve palsy (Tr. 581) and her headaches were due to any particular disorder (Tr. 584). Dr. Puestow concluded there was no objective basis to restrict Plaintiff any further than the RFC found. (Tr. 585).

On November 2, 2007, Dr. Brian Oronsky, M.D. completed an Impairment Questionnaire of Plaintiff. (Tr. 659-666). Dr. Oronsky opined that Plaintiff was able to sit a total of less than 1 hour total in an 8-hour workday, and needed to get up and move around every 30 minutes when sitting. (Tr. 661). Dr. Oronsky reported that Plaintiff could occasionally lift 10 pounds, but never carry any weight. (Tr. 662). She was also found to have significant limitations performing repetitive reaching, handling, fingering, and lifting due to carpal tunnel syndrome. (Id.). Dr. Oronsky assessed that Plaintiff's pain, fatigue, or other symptoms were frequently severe enough to interfere with her attention and concentration. (Tr. 664).

Plaintiff was again seen by Dr. Harper-Nimock after her first hearing before the ALJ. (Tr. 748-58). Dr. Harper-Nimock diagnosed Plaintiff with bilateral radial nerve palsy, COPD, migraine headaches, fibromyalgia, anxiety disorder, and asthma. (Tr. 750). She opined that Plaintiff could occasionally lift up to 10 pounds and carry up to 20 pounds. (Tr. 753). During an eight-hour workday, Dr. Harper-Nimock opined that Plaintiff could sit a total of three hours (15 to 30 minutes at a time), stand a total of three hours (15 to 30 minutes at a time), and walk a total of three hours (15 to 30 minutes at a time). (Tr. 754). Plaintiff could only occasionally use the upper extremities for reaching, handling, fingering, and pushing/pulling. (Tr. 755). Dr. Harper-Nimock further noted that Plaintiff could never be exposed to unprotected heights, extreme temperatures, and vibrations, and only occasionally be exposed to moving mechanical parts, operating a motor vehicle, humidity and wetness, and pulmonary irritants. (Tr. 757).

**C. Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

not have a severe impairment and is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 34). At step two, the ALJ found Plaintiff had the following severe impairments: anxiety disorder, headaches, chronic obstructive pulmonary disorder, affective disorder, and carpal tunnel syndrome. (Tr. 34-38). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 38). At step four, the ALJ

determined Plaintiff retained the residual functional capacity ("RFC")[2] to perform light work[3] except she must:

> [A]void ladders or unprotected heights, avoid proximity to heavy, moving machinery, avoid concentrated exposure to dust, fumes, or gases, and avoid operation of push/pull atm controls. [Plaintiff] also requires a sit/stand option. She can occasionally bend crouch, kneel, stoop, squat, or crawl. [Plaintiff] needs a low stress job.

(Tr. 39-41).

The ALJ then determined Plaintiff was unable to perform any of her past relevant work. (Tr. 41-42). However, based on testimony from a vocational expert ("VE"), the ALJ determined that other jobs existed in significant numbers that an individual with Plaintiff's RFC, age, education, and work experience could perform. (Tr. 42-43). Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act. (Tr. 43).

---

[2]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b)

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**B. Issues on Appeal**

Plaintiff raises the following three issues on appeal: (1) whether the ALJ properly weighed the medical source opinions (Doc. 12, pp. 15-19); (2) whether the ALJ properly evaluated Plaintiff's credibility (Id. at pp. 20-22); and (3) whether the ALJ relied on incomplete VE testimony (Id. at pp. 22-24). The Court will address each of these issues.

**1. Whether the ALJ properly weighed the medical source opinions.**

Plaintiff argues that the ALJ improperly discounted the opinions of treating physicians, Drs. Frady and Oronsky. (Doc. 12, pp. 10-12). When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. § 416.927(d)(2). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. Lewis, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053. Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v.

Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true. MacGregor, 786 F.2d at 1053.

Here, the ALJ concluded that Dr. Frady's opinions were entitled to "little weight" because they were "not consistent with the claimant's treatment records that show conservative treatment for physical impairments."[4] (Tr. 40). The Court agrees that the objective findings in Dr. Frady's records showed generally unremarkable chest findings, aside from evidence of COPD. See (Tr. 496-501). Additionally, Dr. Frady's proposed limitations are inconsistent with the other medical evidence of record showing minimal complaints or treatment for chest and musculoskeletal problems and generally unremarkable physical findings. See (Tr. 34-37, 381-403, 447-63, 749-50).

Plaintiff contends that the limitations imposed by Dr. Frady's are based on symptoms of migraine headaches and were not adequately considered by the ALJ. (Doc. 12, pp. 16-17). However, Dr. Frady's treatment records make no reference to headaches or any complaints of severe pain, aside from a single medication refill request. (Tr. 496-501). Additionally, as addressed below and by the ALJ, Plaintiff's allegations of disabling limitations due to headaches are not entirely credible as Plaintiff reported medication improved her headaches and she consistently had unremarkable neurological testing. See (Tr. 34-40, 503, 511-12, 517, 524, 527, 531, 534, 546, 550, 553, 565, 599, 610, 613, 616, 619, 623, 628, 632, 636, 656, 760-61). Therefore, the

---

[4] In a May 2005 impairment questionnaire, Dr. Frady opined Plaintiff could sit less than one hour, stand or walk less than one hour, lift no more than five pounds, and had marked manipulative limitations in both extremities. (Tr. 40, 589-90).

Court finds the evidence concerning Plaintiff's headaches does not support the limitations Dr. Frady assessed.

The ALJ also considered treating physician Dr. Oronsky's responses to a November 2007 impairment questionnaire and gave them little weight because the evidence of record did not show findings consistent with the limitations imposed.[5] (Tr. 40-41, 658-66). Plaintiff's contention that the ALJ did not properly evaluate Dr. Oronsky's opinion because he did not discuss every factor listed in 20 C.F.R. §§ 404.1527(d)(2)-(6) and 416.927(d)(2)-(6) is unavailing. (Doc. 12, p. 18). While it was noted in Blades v. Astrue, 2010 WL 3490215, *12 (M.D. Fla. Aug. 5, 2010) that an ALJ is to consider these factors, the court in Blades ultimately found the ALJ erred in failing to explain the weight given to the opinions of a treating and examining physician. Here, in contrast with Blades, the ALJ here explained the weight given to Drs. Frady and Oronsky and explained how the evidence of record supported the opinions given significant weight and how the opinions given little weight were inconsistent with the evidence of record.[6] (Tr. 40-41).

---

[5]Dr. Oronsky opined Plaintiff was able to sit a total of less than 1 hour total in an 8-hour workday, and needed to get up and move around every 30 minutes when sitting. (Tr. 661). He reported that Plaintiff could occasionally lift 10 pounds, but never carry any weight. (Tr. 662). She was also found to have significant limitations performing repetitive reaching, handling, fingering, and lifting due to carpal tunnel syndrome. (Id.). Dr. Oronsky assessed that Plaintiff's pain, fatigue, or other symptoms were frequently severe enough to interfere with her attention and concentration. (Tr. 664). Dr. Oronsky estimated that Plaintiff would be absent from work, on the average, more than three times a month. (Tr. 665).

[6]The ALJ explained that he gave significant weight to the opinion of treating physician Dr. Truty as her opinion was consistent with the evidence of record. (Tr. 40). Dr. Truty opined in September 2005 that Plaintiff would temporarily be unable to use her left hand due to an arm injury she received that month. (Tr. 709). The ALJ found this opinion was consistent with the medical

(continued...)

Contrary to Plaintiff's contentions, the ALJ also properly considered the opinion of state agency reviewing physician Dr. Puestow. (Tr. 41); See 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I). As the ALJ discussed, Dr. Puestow reviewed the evidence of record in October 2005 and opined Plaintiff could do a range of medium work. (Tr. 580-86). The ALJ found this opinion was supported by the evidence of record, but gave Plaintiff the benefit of the doubt in ultimately assessing Plaintiff with a more restrictive RFC to do a range of light work. (Tr. 39, 41).

Plaintiff's contention that the ALJ improperly weighed Dr. Puestow's opinion because he rejected the opinions of Drs. Frady and Oronsky is unpersuasive. (Doc. 12, p. 17). The Court finds the ALJ properly weighed all the treating and examining physicians' opinions of record. (Tr. 40-41). Additionally, the case law Plaintiff relies on for the proposition that a non-examining physician cannot be given great weight unless an examining physician's opinion has been properly rejected is misplaced. The case law cited in Blades and by Plaintiff is all dated prior to a change made to the regulations in 1991 allowing greater weight to be given to reviewing physicians' opinions. See 20 C.F.R. §§ 404.1527(d), (f); 416.927(d), (f). To the extent prior case law conflicts with

---

[6](...continued)
evidence at the time showing slightly decreased arm strength and a slacked wrist and, therefore, gave Dr. Truty's opinion significant weight. (Tr. 40, 707). The ALJ also gave considerable weight to consultative examiner Dr. Harper-Nimock's March 2008 opinion. (Tr. 41). As noted in the ALJ's decision, Dr. Harper-Nimock examined Plaintiff in March 2008 and found generally good physical findings, including improved grip and manipulative testing since previously examining Plaintiff in September 2005. (Tr. 36-37, 571, 748-50). Dr. Harper-Nimock opined Plaintiff could carry up to 11 to 20 pounds, and sit, stand, and walk 15 to 30 minutes at a time and three hours total in an eight-hour day. (Tr. 41, 753-54). The ALJ found these limitations consistent with the evidence of record. (Tr. 41). Accordingly, the ALJ's RFC assessment limiting Plaintiff to a range of light work with a sit/stand option encompasses these limitations. (Tr. 39).

the Commissioner’s regulations, courts should defer to the Commissioner’s regulations. See Nat’l Cable & Telecomms. Ass’n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005).

Furthermore, the Court disagrees with Plaintiff’s contention that Dr. Puestow’s assessment is “inherently limited” because he is never asked to consider the impact of pain. (Doc. 12, p. 18). Dr. Puestow specifically noted Plaintiff’s allegations of headaches in the exertional limitations he assessed. (Tr. 580). Section I of the assessment form refers to the need to alternate sitting and standing “to relieve pain or discomfort” and requests the reviewing physician to explain the exertional and postural limitations assessed. (Tr. 580-81). In section II of the assessment, Dr. Puestow responded to questions regarding Plaintiff’s alleged symptoms, and again noted Plaintiff’s history of headaches and normal exam findings in spite of her allegations. (Tr. 584). In light of the foregoing, the Court finds the ALJ properly evaluated the medical opinions and evidence of record and accorded them proper weight.

**2. Whether the ALJ properly evaluated Plaintiff’s credibility.**

Plaintiff argues the ALJ failed to properly evaluate her credibility. Specifically, Plaintiff contends the ALJ did not adequately address her complaints associated with migraine pain. (Doc. 12, pp. 20-22). In the Eleventh Circuit, subjective complaints of pain are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptom arising from the condition or (3)

evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).[7] "[O]nce such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote, 67 F.3d at 1561.[8] Thus, once the pain standard is satisfied, the issue becomes one of credibility.

---

[7]"Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw reasonable conclusions about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

[8] Social Security Ruling 96-7p provides, in relevant part:

> 2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.
>
> 3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.
>
> 4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. Foote, 67 F.3d at 1561. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." Id. at 1561-62. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Id. at 1562. The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. Id. The lack of a sufficiently explicit credibility finding may give grounds for a remand if the credibility is critical to the outcome of the case. Id. If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court)). Thus, where credibility is a determinative factor, the ALJ must explicitly discredit the testimony or the implication must be so clear as to amount to a specific credibility finding. Foote, 67 F.3d at 1561.

Here, the ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms ... " (Tr. 39). Thus, the ALJ found that Plaintiff's impairments satisfied the pain standard. See Holt, 921 F.2d at 1223. However, the ALJ also determined that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(T. 39). Therefore, the ALJ made a specific credibility finding that Plaintiff's subjective statements were not entirely credible. See Foote, 67 F.3d at 1561. The issue for the Court to determine is whether the ALJ's credibility finding is supported by substantial evidence.

In determining credibility, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p. As reflected in the ALJ's decision, Plaintiff's records from 2001 through 2003 primarily showed treatment for headaches, with some problems with withdrawal symptoms and narcotics addiction. (Tr. 34-35, 40, 261-98, 314). An August 2002 record showed Imitrex and Tylenol relieved Plaintiff's migraine symptoms. (Tr. 291). Plaintiff experienced medication withdrawal symptoms in November 2002 and March 2003, and her primary care physician dropped her as a patient because of problems with refilling her prescriptions. (Tr. 275, 279).

Additionally, the ALJ reviewed Plaintiff's records from 2005 through 2007 which consistently showed normal neurological and mental status findings and relief with medication. See (Tr. 503, 511-12, 517, 524, 527, 531, 534, 546, 550, 553, 565, 599, 610, 613, 616, 619, 623, 628, 632, 636, 656). Records from January 2008 and February 2008 showed medication improved Plaintiff's headaches, with reports of only moderate pain. (Tr. 759-62). Therefore, the ALJ properly considered the fact that

Plaintiff's headaches were effectively treated with medication. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); Dyer, 395 F.3d at 1211; Wolfe v. Chater, 86 F.3d 1072, 1078 (11th Cir. 1996).

The ALJ also noted that Plaintiff's activities of daily living do not support the disabling symptoms alleged. (Tr. 41); See 20 C.F.R. §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (the ALJ may consider a claimant's daily activities during the fourth step of the sequential evaluation process). Plaintiff reported she was capable of cooking, cleaning, driving her daughter twice a week to dialysis. (Tr. 204-05, 781, 783-85).

In light of the foregoing, the Court finds substantial evidence supports the ALJ's determination that Plaintiff's complaints of disabling pain were not entirely credible. See Foote v. Chater, 67 F.3d 1553, 1662 (11th Cir. 1995) (an ALJ's clearly articulated credibility finding will not be disturbed when supported by substantial evidence). Although Plaintiff focuses on the ALJ's observations of Plaintiff's negative CT scans and reported activities of daily living (Doc. 12, pp. 21-22), the ALJ's decision shows his credibility determination was not based solely on these observations. As discussed above and by the ALJ, the objective medical evidence consistently showed conservative treatment of Plaintiff's headaches with medication and unremarkable neurological findings. See (Tr. 35-40, 503, 511-12, 517, 524, 527, 531, 534, 546, 550, 553, 565, 599, 610, 613, 616, 619, 623, 628, 632, 636, 656). This, in combination with the other evidence of record, provides substantial evidence to support the ALJ's credibility determination. See 20 C.F.R. §§ 404.1529(c), 416.929(c).

**3. Whether the ALJ relied on incomplete VE testimony.**

Here, the ALJ determined that Plaintiff retained the RFC to perform light work with some limitations. (Tr. 15-21). Consequently, the ALJ found Plaintiff could not perform his past relevant work. (Tr. 41-42). After making this determination, the ALJ elicited testimony from a VE to determine whether Plaintiff, based on his age, education, past work experience, and RFC, was able to perform other work that exists in significant numbers in the national economy. (Tr. 695); see Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) ("The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."). The VE testified that based on the ALJ's representations, Plaintiff could perform other light work jobs that all exist in significant numbers in the national economy. (Tr 299-802).

In the ALJ's representations to the VE, he is not required to itemize limitations already implicit in the statutorily definition of level of light work. See Ingram v. Comm'r of SSA, 496 F.3d 1253 (11th Cir. 2007). Rather, the ALJ is required to present a hypothetical question which includes Plaintiff's age, education, work experience, and RFC. 20 C.F.R. § 404.1560(c)(1) ("We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience."). Here, the ALJ fulfilled this burden by using the Medical-Vocational Guidelines as a framework for decision-making in conjunction with VE testimony (Tr. 799-802) to find Plaintiff could perform other work (Tr. 42). See 20 C.F.R. pt. 404, subpt. P, app. 2, rule 202.21. The ALJ's reliance on the VE's testimony

was proper since the hypothetical question posed to the VE adequately portrayed Plaintiff's credible limitations of record and the VE identified jobs Plaintiff could perform. (Tr. 799-802); See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Despite Plaintiff's contentions, the ALJ properly considered all the evidence of record, including evidence concerning Plaintiff's headaches and all the opinion evidence of record, and concluded Plaintiff could do a range of low stress, light work. (Tr. 39). As the ALJ clarified in his hypothetical, this also included a limitation to unskilled work. As discussed above, Plaintiff failed to show she had limitations greater than what the ALJ included in the hypothetical posed to the VE. The ALJ is not required to include findings which are unsupported by the medical evidence. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004). A proper hypothetical need not set forth medical diagnoses; rather, it must contain a claimant's physical or mental limitations. Moore v. Barnhart, 405 F.3d 1208 (11th Cir. 2005).

Accordingly, the Court finds the ALJ demonstrated that Plaintiff was capable of performing light level jobs which exist in significant number nationally.[9] Plaintiff failed to prove she could not perform these light level jobs; therefore, substantial evidence supports the ALJ's finding that Plaintiff is not under a disability as defined by the Act. See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999) ("If the Commissioner can

---

[9]The Commissioner is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). Even if this Court would resolve those disputed factual issues differently than the ALJ, his decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

demonstrate that there are jobs the claimant can perform, the claimant must prove she is unable to perform those jobs in order to be found disabled.").

## IV. CONCLUSION

Upon due consideration, the Court finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, and for the aforementioned reasons, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this 13th day of September, 2011.

Monte C. Richardson

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record